IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **FREDERICK DWIGHT GREEN,** : | |
| : | |
| Plaintiff, : | |
| VS. : | **CASE NO.: 5:22-CV-298-TES-CHW** |
| : | |
| Warden **AIMEE SMITH,** *et al.*, : | |
| : | |
| Defendants. : | |
| _____ : | |

### ORDER AND RECOMMENDATION

Presently pending before the Court are the claims of *pro se* Plaintiff Frederick Dwight Green, an inmate who is presently incarcerated at the Valdosta State Prison in Valdosta, Georgia. In accordance with the Court's previous orders and instructions, Plaintiff has now filed a Recast Complaint (ECF No. 13), and the claims asserted therein are now ripe for review. For the following reasons, it is found that Plaintiff has failed to allege facts sufficient to show that he was in imminent danger at the time he filed this case. It is therefore **RECOMMENDED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 2) be **DENIED** and that Plaintiff's Recast Complaint be **DISMISSED without prejudice.** Because Plaintiff has had the opportunity to recast his Complaint to include all possible claims of imminent danger, and pursuant to the Court's previous orders and instructions, Plaintiff's pending motions to amend (ECF Nos. 4, 6, 8) are **DENIED as moot.**

## MOTION TO PROCEED IN FORMA PAUPERIS

As the Court previously observed, federal law bars a prisoner from bringing a civil action in federal court *in forma pauperis*

> if [he] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). This is known as the "three strikes provision." Under § 1915(g), a prisoner incurs a "strike" any time he has a federal lawsuit or appeal dismissed on the grounds that it is (1) frivolous, (2) malicious, or (3) fails to state a claim. *See Medberry v. Butler*, 185 F.3d 1189, 1192 (11th Cir. 1999); *see also Daker v. Comm'r, Ga. Dep't of Corr.*, 820 F.3d 1278, 1283-84 (11th Cir. 2016) (confirming that "these three grounds are the *only* grounds that can render a dismissal a strike"). Once a prisoner incurs three strikes, his ability to proceed *in forma pauperis* in federal court is greatly limited: leave to proceed *in forma pauperis* may not be granted unless the prisoner is under imminent danger of serious physical injury. *Medberry*, 185 F.3d at 1192.

The Court has again confirmed that Plaintiff has filed multiple federal lawsuits and that at least three of his complaints or appeals have been dismissed as frivolous, malicious, or for failure to state a claim. *See, e.g.,* Order Dismissing Compl., *Green v. Rockdale Cnty.*, ECF No. 9 in Case No. 1:21-cv-03377-ELR (N.D. Ga. Nov. 4, 2021) (adopting recommendation to dismiss pursuant to 28 U.S.C. § 1915A); Order Dismissing Compl., *Green v. Blair*, ECF No. 17 in Case No. 3:18-cv-00013-DHB-BKW (S.D. Ga. Apr. 23, 2018) (adopting recommendation to dismiss as a sanction for abuse of the judicial process);

Order Dismissing Compl., *Green v. Owens*, 4:14-cv-00201-HLM (N.D. Ga. Oct. 8, 2014) (adopting recommendation to dismiss as frivolous). Plaintiff is accordingly barred from prosecuting this action *in forma pauperis* unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

To qualify for this exception, a prisoner must allege specific facts that describe an "ongoing serious physical injury," or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury." *Sutton v. Dist. Attorney's Office*, 334 F. App'x 278, 279 (11th Cir. 2009) (per curiam) (internal quotation marks omitted). Complaints of past injuries are not sufficient. *See Medberry*, 185 F.3d at 1193. Vague and unsupported claims of possible dangers likewise do not suffice. *See White v. State of Colo.*, 157 F.3d 1226, 1231 (10th Cir. 1998). The exception to § 1915(g) is to be applied only in "genuine emergencies," when (1) "time is pressing," (2) the "threat or prison condition is real and proximate," and (3) the "potential consequence is serious physical injury." *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

Most of Plaintiff's claims appear to have arisen while he was confined in the Dooly County Prison ("DSP"), where he was attacked by more than a dozen inmates at knifepoint during what evolved into a "major disturbance/riot." *See, e.g.,* Recast Compl. 20, ECF No. 13. Plaintiff generally claims that the Defendant prison officials failed to prevent this attack, placed him in Tier II segregation without due process after the attack, and have been deliberately indifferent to his safety at the prison to which he was transferred after the attack, Valdosta State Prison ("VSP"). But because Plaintiff was transferred to VSP after

the riot (and before he filed his Complaint in this case), he must establish that he is in imminent danger of serious physical injury at VSP. *See Medberry*, 185 F.3d at 1193.

When Plaintiff's Recast Complaint is construed liberally, there are at least four allegations that could support Plaintiff's belief that he is in some danger at VSP. First, Plaintiff contends there has been one murder and at least two incidents where inmates attacked staff members at VSP since June 2022. Recast Compl. 30, ECF No. 13. Second, Plaintiff contends VSP is understaffed in the same manner as DSP—i.e., one officer must "monitor and secure four units"—and that similar levels of understaffing contributed to the prison riot at DSP. *Id.* Third, Plaintiff alleges that the prisoners who attacked Plaintiff at DSP are "affiliated GDC offenders." *Id.* at 31. According to Plaintiff, "'affiliated' prisoners communicate with each other from prison to prison using cellphones to notify their members to be on the lookout for enemies who may arrive at the new location." *Id.* Plaintiff contends that because he was attacked by "affiliated" prisoners at DSP, it is likely that he will be attacked by "affiliated" prisoners in general population at VSP. *Id.*[1] Fourth, Plaintiff contends he is "exposed to dangerous weather conditions" on Tier II because the cells do not have electrical outlets. *Id.* at 19.

Plaintiff's allegations are not sufficient to show that he is entitled to the § 1915(g) exception. The gist of the Recast Complaint is that Plaintiff is concerned for his safety

---

[1] It is unclear why Plaintiff believes "affiliated" offenders would consider him to be their "enemy." At most, Plaintiff alleges that prison officials conducted a shakedown of his housing unit shortly after the June riot at DSP and uncovered a significant amount of contraband. Recast Compl. 31, ECF No. 13. But Plaintiff's connection to this contraband—or even to the "affiliated offenders"—is not clearly described in the Recast Complaint.

once he is *released* from Tier II administrative segregation and placed back in general population. Recast Compl. 31, ECF No. 13 ("I know that it's more likely than not that I'll be walking into an ambush whenever I'm released to general population whether here at VSP or another facility."); *see also id.* ("My situation is pressing and must be addressed immediately because Mr. Ford has allowed this staffing crisis to continue and I could be released to general population any day now as a result of this present litigation.").

Plaintiff acknowledges that he will be housed in Tier II "for a mandatory-minimum of 10 months," *id.* at 20, and most of his allegations do not relate to his safety in Tier II at all. None of the attacks referenced by Plaintiff appears to have occurred in the Tier II segregation unit at VSP, and two of the three incidents did not involve inmate-on-inmate violence. It is also unclear from the Recast Complaint whether Tier II is subject to the same level of alleged understaffing as the other areas of the prison. Plaintiff also acknowledges that prison officials are aware that he was previously attacked by "affiliated" offenders, and he does not suggest that prison officials failed to consider this fact when determining the propriety of Plaintiff's current placement on Tier II.

The Recast Complaint is likewise devoid of any allegation that these "affiliated" offenders have threatened Plaintiff's life since he has been at VSP, have attempted to cause him harm at that facility, or would even have access to Plaintiff on Tier II. In short, Plaintiff's concern about danger that will only occur months from now—if at all—does not provide an adequate basis for finding that he is presently in imminent danger of serious physical injury. *See, e.g., Sanders v. Melvin*, 873 F.3d 957, 960 (7th Cir. 2017) ("If fears about the future made for an 'imminent danger of serious physical injury,' [§ 1915(g)]

5

would not serve to curtail litigation by those who have demonstrated a propensity to make baseless or malicious claims.").

The only allegation in the Recast Complaint that directly relates to Plaintiff's current confinement on Tier II at VSP is that he is "exposed to dangerous weather conditions" because his cell does not have an electrical outlet. Recast Compl. 19, ECF No. 13. More specifically, Plaintiff alleges he is unable to have a personal fan, and "the extreme heat" in his cell "is especially dangerous because [he] take[s] mental health medications." *Id.* Plaintiff states he has "already blacked out once" from the heat but was saved from injury because his "cellmate caught [him] in mid-fall." *Id.* Plaintiff has experienced only one heat-related incident since he has been incarcerated at VSP, however, and he did not seek medical attention for it because he has learned "it is better to just lie down until [he] feel[s] better." *Id.* Plaintiff also alleges that he notified prison officials of this incident, *id.* at 19-20, and he does not allege any facts indicating that prison officials would not provide him accommodations, such as ice water, if he felt poorly in the future. Plaintiff has therefore failed to plead facts sufficient to show that the condition of his cell places him in imminent danger of serious physical injury. *See, e.g., Sanders*, 873 F.3d at 960 (holding that prisoner's "contention that heat and restricted ventilation aggravate his asthma alleges a risk of physical injury, but not an 'imminent one'"); *Thompson v. Allred Unit*, No. 22-10641, 2022 WL 14461808, at *1 (5th Cir. Oct. 25, 2022) (unpublished opinion) (per curiam) (denying leave to proceed *in forma pauperis* on appeal where prisoner's allegations that "cold temperatures in his cell block put him in imminent danger of serious physical injury" were "conclusory and speculative").

Perhaps more importantly, Plaintiff's allegations about exposure to "extreme" weather conditions "are too attenuated from the crux of the [recast] complaint" to serve as the basis for his entitlement to the § 1915(g) exception. *Daker v. Robinson*, 802 F. App'x 513, 515 (11th Cir. 2020) (per curiam). Plaintiff's Recast Complaint focuses almost exclusively on two issues: (1) that Plaintiff was not afforded due process before being placed in Tier II segregation and (2) that prison officials have been deliberately indifferent to the threat posed to Plaintiff by other inmates at both DSP and VSP. Section 1915(g) "requires that the prisoner's complaint seek to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). Any relief this Court could provide concerning the heat in Plaintiff's cell would do nothing to address the alleged due process and deliberate indifference claims at issue in the Recast Complaint. For this reason as well, Plaintiff's allegations concerning the heat in his cell fail to establish that he is entitled to the § 1915(g) exception.

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) be **DENIED** and that this action be **DISMISSED without prejudice** to his right to refile with pre-payment of the full $400 filing fee. *See Dupree v. Palmer*, 284 F.3d 1234, 1236 (11th Cir. 2002) (per curiam) ("[T]he proper procedure is for the district court to dismiss the complaint without prejudice when it denies the prisoner leave to proceed *in forma pauperis* pursuant to the three strikes provision of § 1915(g)."). Plaintiff's motions to amend (ECF Nos. 4, 6, 8) are **DENIED as moot.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Tilman E. Self, III, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Recommendation. Any objection is limited in length to **TWENTY (20) PAGES**. *See* M.D. Ga. L.R. 7.4. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

**SO ORDERED AND RECOMMENDED**, this 29th day of November, 2022.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge